# Exhibit 1

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Arbitration Tribunal

---

In the Matter of the Arbitration between

Case Number: 01-21-0002-3409

Julia Predmore

-vs-

Nick's Management, Inc., Nick's Clubs, Inc., f/k/a
Adventure Plus Enterprises, Inc., d/b/a PT's Men's
Club and Nick Mehmeti

---

## FINAL AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated under the personnel manual or employment agreement entered into by the above-named parties and dated February 13, 2019, and having been duly sworn and having duly heard the proof and allegations of the parties, and Julie Predmore being represented by Matthew Thomson of Lichten & Liss-Riordan, P.C. and Drew Herrmann and Pamela Hermann of Herrmann Law, PLLC and Respondents Nick's Management, Inc., Nick's Clubs, Inc. f/k/a Adventure Plus Enterprises, Inc. d/b/a PT's Men's Club and Nick Mehmeti being represented by Latrice Andrews of Sheils Winnubst, AWARD:

### I. Introduction

This arbitration was held before Karen K. Fitzgerald on June 14 and 15, 2022 in Dallas, Texas. After presentation of the evidence, the parties submitted post-hearing briefs and the arbitration was formally closed on June 22, 2022. The Arbitrator issued an Interim Award on August 17, 2022.

Claimant submitted her fee application within 30 days. Respondents filed their responses within 30 days and Claimant had an opportunity to file her reply.

The parties then participated in a management conference on November 14, 2022. Claimant requested to reopen the arbitration due to the discovery of additional time records not produced by Respondent. The Arbitrator found that there was good cause to reopen the evidence to allow for production of all time sheets concerning shifts

1

worked by Claimant. The parties submitted the additional evidence to the Arbitrator by December 16, 2022 with their calculation of the damages each party contended was owed based on the updated time records. The arbitration was then closed on December 19, 2022.

Because additional evidence was produced concerning the damages incurred by Claimant, this Final Award supersedes the Interim Award and also addresses the issues presented by the fee application.

## II. Issues Presented

Claimant Julia Predmore asserts claims under the Fair Labor Standards Act. Predmore contends she was misclassified as an independent contractor when she should have been classified as an employee. Predmore contends that she was not paid minimum wage as an employee and that she may have minimum wage for all hours worked and overtime for all hours worked over 40 hours per week. Predmore also contends that she inappropriately had to pay fees and tip outs and that she should recover the illegal tip outs and house fees she paid from Respondents.

Respondents deny liability to Predmore. Respondents contend Predmore was an independent contractor who breached her contract in a variety of ways that damaged Respondents. Respondents also assert a claim for unjust enrichment.

Predmore seeks an award of $229,678.87 in attorney's fees from Respondents PT's Men's Club and Nick Mehmeti. Respondents oppose this request.

Respondent Nick's Management Inc, seeks an award of costs against Claimant Predmore in the amount of $13,749.30. Claimant opposed this request.

## III. Factual Background.

Predmore worked for Nick's Clubs, Inc. f/k/a Adventure Plus Enterprises, Inc. d/b/a PT's Men's Club ("PT's") as an exotic dancer. Predmore has worked in the exotic dancing industry since 2011. She originally worked for PT's in 2016, but left to attend college. Predmore returned to PT's in 2019. Predmore signed a License and Lease Agreement (CX 1) with PT's on February 13, 2019 and began work that day. Predmore worked intermittently at PT's until her last day in September 2019. Predmore testified that she worked in February, March, April, August and September 2019.

Predmore testified that she paid a house set fee (or "rent") when she arrived at work. Predmore would give her house fee receipt to the house mom, who would enter the set fee collected and record Predmore's time in and time out on the sign in sheet. The sign in sheets are CX 15 and RX 11 (with redactions).

Predmore testified that, while she did not have to work in any week, if she chose to work, she had to work a certain number of shifts per week. Predmore also testified that if she arrived for a shift late or left a shift early, she had to pay a fine for doing so. Predmore testified that she would be put on a stage rotation list and called up to dance on stage. If Predmore missed a stage rotation, she paid a fine. When Predmore was not dancing on stage, she would mingle with PT's customers and perform private dances. Predmore testified she had to charge $20 for a private lap dance and that she could not change that price.

Predmore contended that PT's had rules about a dancer's appearance and did not allow tattoos or for a dancer to wear her hair up. She testified that she had to be topless while on stage and to wear a t-back. Predmore testified that she had to wear themed costumes on certain days. If her outfit did not fit the theme, she would have to buy a new costume for the day. However, there was evidence that showed dancers who did not wear t-backs, who had tattoos and who wore their hair up in a ponytail.

Predmore testified that she did not get paid directly by PT's. Instead, Predmore was paid only through customer tips and charges for private lap dances. Predmore testified that she averaged approximately $250 per shift after she paid her house fees and required tip-outs of $24 ($10 to the D, $10 to the House Mom and $4 to the bartender). The deposits to Predmore's bank account did not necessarily match those estimates. (RX 21).

The hours Predmore worked were recorded on the sign in sheets. RX 42 summarized the hours worked by Predmore based on the sign in sheets.

Per the sign in sheets introduced into evidence at the hearing, Predmore worked 277.42 hours in 35 shifts. (RX 42). That was an average of 7.9 hours per shift. However, the supplemental time sheets added significant additional time to the hours worked. (Claimant's Brief in Support of Increased Damages). The additional time sheets located after the hearing showed that Ms. Predmore worked a total of 575.29 hours for Respondents with 101 hours in overtime. (Claimant's Brief in Support of Increased Damages, Ex. 1).

Predmore testified that she worked at more than one club at a time and that there was a period when she danced at both Buck's Wild and PT's. Predmore contended she would alternate weeks at PT's and Buck's when she did so.

Two other dancers, Atoria Cooper and Svetlana Kuvenko, also testified in support of Predmore's claims. Both corroborated that they had to work a required number of shifts in a week and pay a mandatory house fee or "rent" to work a shift. Both corroborated there were rules about a dancer's appearance and fines if a dancer left a shift early. Both corroborated there was a set fee of $20 for a lap dance and that

they had to pay a tip-out to the DJ and the house mom. Both confirmed there was a dancer stage rotation and a dancer had to pay a fee if she missed her rotation.

Kuvenko testified that there was not always a sign in sheet available when she arrived for a shift and that the sign in sheet was not always presented to her for signature.

Nick Mehmeti, owner of PT's, testified. Mehmeti testified that Nick's Clubs, Inc. does business as PT's Men's Club. Mehmeti testified that Nick's Management, Inc. is an accounting and bookkeeping company that does accounting and payroll for PT's and other companies. Mehmeti testified that Adventures Plus had been the entity that operated PT's until about two years ago.

Mehmeti testified that PT's gross receipts reflected on the 2019 tax return were approximately $4.7 million. (CX 16). Mehmeti testified that PT's is adult entertainment business offering live nude entertainment. PT's hires as employees the waitresses, bartenders, cooks, doormen, DJ, dishwashers, barbacks, and the club managers. The dancers sign an Independent Contractor agreement though Mehmeti contends that dancers are given the option to be employees instead of independent contractors.

Mehmeti testified that the dancers are not paid any wages by PT's and that the dancers do not receive a paycheck or W-2 from PT's. Instead, the dancers earn money from performing on the stage and floor. PT's does not keep track of the money earned by any dancer. The club has no records to show what any dancer earns in entertainment fees or lap dances.

Mehmeti testified that dancers used to be employees in the past. However, at some point in time, the industry switched to an independent contractor model. Mehmeti testified that he was generally familiar with federal labor laws and tried to comply with federal labor laws. Mehmeti testified that someone reviews Department of Labor fact sheets in deciding whether dancers can be treated as independent contractors. However, Mehmeti testified that he personally has not communicated with the Department of Labor regarding the rules. Though Mehmeti knows of industry standards, Mehmeti also knows of other clubs sued for FLSA violations involving the independent contractor arrangement with dancers. Mehmeti included Section 7(d) in the independent contractor agreement because of a concern that a dancer would sue PT's for violating the FLSA.

Mehmeti testified that the independent contractor agreement required the dancers to keep records of their earnings if the dancer converted from an independent contractor to an employee. There, the dancer would have to return the entertainment fees received from customers and give that to the club. Mehmeti testified that Predmore has not given PT's any of the entertainment fees she received.

Mehmeti testified that PT's did not "fine" dancers for coming in late or leaving early. However, it offered them "incentives" in the form of discounts to their rent if they worked certain early in the week shifts or arrived on time for shifts.

Mehmeti testified that PT's seeks damages from Predmore for breaches of her independent contractor agreement and reimbursement of the fees it incurred in compelling arbitration of her claims.

One of the PT's Manager, Gerard Cordova, testified. According to Cordova, there are dancers with tattoos, piercings and who may work with their hair up. Cordova testified that costumes were not required, but were strongly advised for certain themed events.

Cordova testified that a dancer does not have to work every week. However, if a dancer works in a week, the dancer must work three shifts that week. PT's discounts dancer rent fees if a dancer will work a shift early in the week when business is typically slower. Cordova testified that a dancer may come in and leave when the dancer wishes, but the dancer may have to pay contract damages to leave early. Cordova testified that some dancers only work weekend shifts because they view it as more beneficial to them and they pay the higher house fee to do so.

Cordova testified that the club did the advertising and he believed no dancers did advertising for PT's. Cordova also testified that a dancer could change the price of the lap dance, but the contract required the dancer to notify the club of any price change. This provision avoided disputes with the customer about the price of a lap dance.

## IV. Analysis of Claims and Counterclaims

While not every legal and factual argument set forth by the parties is addressed in this Award, each was considered. Each legal argument and pleading will not be recited in this Award, but each was considered. Not every fact or reason supporting the ruling is recited in this Award. The testimony of each witness was considered. Every exhibit admitted into evidence was read and considered. Implicit in every factual determination is an evaluation of the witnesses' credibility and the evidence. References to exhibits, arguments or cases do not necessarily list every one which supports the statements.

As a threshold issue, Predmore sued multiple respondents. The evidence established that Nick's Management, Inc. is an accounting and bookkeeping company that works for PT's Men's Club and other customers. It did not own or run any part of PT's Men's Club. Accordingly, Plaintiff takes nothing on her claims against Nick's Management, Inc.

However, as to Predmore's claims against PT's and Mehmeti in his individual capacity, the Arbitrator rules:

## A.    Fair Labor Standards Act violation

The preponderance of the evidence establish that Predmore was misclassified as an independent contractor.

PT's had revenue sufficient to be covered under the FLSA since it had revenues in excess of $500,000. (CX 16).

In determining whether a person is an employee for FLSA purposes, courts use the "economic realities" test to determine if the person is, as a matter of economic reality, economically dependent on the business to which he/she renders services. *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 327 (5th Cir. 1993).

To determine a worker's dependence, courts look at these factors:

1.    the degree of control exercised by the alleged employer.

2.    the extent of the relative investment of the worker and the alleged employer.

3.    the degree to which the worker's opportunity for profit or loss is determined by the alleged employer.

4.    The skill and initiative required in performing the relationship.

5.    the permanency of the relationship.

6.    whether the worker's job was an integral part of the company's business.

*Reich,* 998 F.2d at 327; *Hobbs v. Petroplex Pipe & Constr., Inc.,* 946 F.3d 824, 836 (5th Cir. 2020).

Many cases involve exotic dancers in which courts have analyzed whether a dancer is economically dependent on the club in which she performs services. In the vast majority of these, courts concluded that the dancer should have been treated as an employee and was not a true independent contractor. These cases include, among others, *Reich,* 998 F.2d at 327; *Johnson v. N. Tex. Dancers, LLC,* No. 7:20-CV-00116-O, 2021 WL 2077649 (N.D. Tex. May 24, 2021)(O'Connor, J.); *Gilbo v. Agment, LLC,* 831 Fed. Appx. 772, 778 (6th Cir. 2020); *Verma v. 3001 Castor, Inc.,* 937 F.3d 221, 232 (3d Cir. 2019); *Hart v. Rick's Cabaret Intern., Inc.,* 967 F. Supp. 2d 901, 919 (S.D.N.Y. 2013).

### 1.    Degree of Control

This factor favors Predmore.

In analyzing the claims, these courts cited, *supra,* all had facts similar to Predmore's situation demonstrating that the club held a degree of control over the dancers, such as:

- the dancer had to comply with a weekly schedule;
- the dancer had to pay some fines or fees for absences, tardiness or leaving early;
- there was a set price for lap dances;
- the dancer had no final say in the music used;
- the club set minimum standards for dancer costumes.

The preponderance of the evidence presented demonstrated that the club exercised control over Predmore when she performed services for the club.

### 2.    Relative Investment

Predmore's investment in costumes, shoes, and makeup is far less than the cost of operating the nightclub. *See Reich,* 998 F.2d at 327–28; *Johnson,* 2021 WL at * 4. This factor favors Predmore.

### 3.    Opportunity for profit and loss

When courts evaluate this factor, they note that the nightclub has the most significant role in drawing customers to the nightclub by overseeing the advertising, location selection, business hours, maintenance of facilities, aesthetics and food. *Reich,* 998 F.2d at 328; *Johnson,* 2021 WL at *4. Faced with an argument that a dancer can "hustle" more to increase her opportunity for profit, most courts have rejected that argument. *Verma,* 937 F.3d at 231. This factor favors Predmore.

### 4.    Skill and initiative required to perform the job

Virtually all courts find that exotic dancers require no specific skill to perform the job. The preponderance of the evidence established that PT's does not require its dancers to have any experience or training. This factor favors Predmore.

### 5.    Permanency of the relationship

The evidence established that dancers do not maintain a permanent relationship with a club. The dancers often float between clubs and even work for multiple clubs at a time. Here, Predmore worked for PT's between February 2019 and September 2019 and only worked on a sporadic basis in that period. There were months when Predmore was out of state and did not work for PT's. This factor favors PT's.

### 6.    Whether the worker is an integral part of the business

Though the Fifth Circuit does not always include this final element in its economic realities test, Predmore and the other dancers are integral to PT's business. PT's is, as Mehmeti testified, a sexually oriented business offering live nude entertainment to its customers. PT's customers do not come for its food and non-alcoholic beverages. The services provided by Predmore are integral to PT's business. *Verma*, 937 F.3d at 232. This factor favors Predmore.

The preponderance of the evidence compels the conclusion that Predmore was misclassified for FLSA purposes and that Predmore should have been classified as an employee.

The one case relied on by Respondents, *Nelson v. Tex. Sugars, Inc.*, 838 Fed. Appx. 39 (5th Cir. 2020) differs. There, a jury held, after hearing the evidence, that exotic dancers were not employees within the meaning of the FLSA. While there are similarities between the evidence presented by Predmore and that in the *Nelson* case, there are also differences in the evidence. The preponderance of the evidence submitted at this hearing supports the conclusion that Predmore is an employee under the FLSA.

Because Predmore was misclassified, Predmore was not paid any minimum wage and received no overtime for the weeks in which she worked more than 40 hours per week in violation of the FLSA. Predmore may have damages under the FLSA.

### B.    Predmore's Damages

Respondents did not maintain a record of the hours worked by Predmore. Thus, Predmore is entitled to submit evidence of work she performed. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).

Predmore testified that she worked an average of 50 hours per week at PT's during the weeks she worked there and that the average length of a shift was 10 hours. Predmore supported her claimed damages on the spreadsheet marked as CX 8. Claimant continues to seek damages at this rate in Claimant's Brief in Support of Increased Damages. However, Predmore's estimate is a gross overestimate of the overtime hours she worked. Even the text messages produced by Predmore do not support this estimate.

The actual sign in sheets (including the supplemental sign-in sheets) do not support that testimony. Of the weeks Predmore worked at PT's, the sign in sheets show she worked more than 40 hours in only eight of the fourteen weeks she worked for PT's. In some of those weeks, she worked as little as 1 to 4 hours of overtime. See Claimant's Brief in Support of Increased Damages and Respondents' Calculation of Time Claimant Performed in Club..

8

Based on the evidence presented, Predmore may recover minimum wage on 575.29 hours, for **$4,170.85.**

Predmore worked overtime only during eight weeks. Predmore worked overtime for 101.42 hours. (Claimant's Brief in Support of Increased Damages, Ex. 2). At the half-time rate of $3.62[1] per overtime hour, Predmore may have overtime damages of **$367.14** for those 101.42 hours.

Respondents may not have an offset of any lap dance fees paid to Predmore as a "service charge" or tips received by Predmore. Under the FLSA, tips received are not wages and belong solely to the employee. 29 C.F.R. § 531.52. The lap dance fees are not "service charges" under the FLSA because the lap dance fees are not recorded in the company's gross receipts and distributed by the company to the employees. 29 C.F.R. § 531.55(b). *See also Hart v. Rick's Cabaret Intern., Inc.,* 967 F. Supp. 2d 901, 928–29 (S.D.N.Y. 2013); *McFeeley v. Jackson St. Entm't, LLC,* 825 F.3d 235, 246 (4th Cir. 2016).

Besides the minimum wage and overtime pay, Predmore may also recover of **$2,800.00** in house fees and **$1,680.00** in tip-outs. (CX 8).

The preponderance of the evidence established that this was a willful violation. Mehmeti is well-experienced in this industry. Though he testified that he tries to fully comply with the law, Mehmeti also testified that he was aware of the litigation involving the independent contractor arrangement and that it has found to violate the FLSA.

Predmore may recover these damages from PT's Men's Club and Nick Mehmeti:

| Element of Damages | Amount |
|---|---|
| Minimum Wages | $4,170.85 |
| Overtime | $367.14 |
| House Fees | $2,800.00 |
| Tip outs | $1,680.00 |
| Sub-Total | $9,017.99 |
| | |

---

[1] In Claimant's Brief in Support of Increased Damages, Claimant acknowledges that overtime should be calculated at the half-time rate since Claimant received the $7.25 base wage for those overtime hours through her minimum wage.

9

| Liquidated Damages | $9,017.99 |
|---|---|
| | |
| Total | $18,035.98 |

Because Predmore has been awarded damages on her FLSA claim, Predmore was allowed to seek her reasonable attorney's fees as the prevailing party.

### C.    Respondents' affirmative defenses

In reaching this conclusion, Respondents' affirmative defenses have been considered and rejected.

Respondents asserted a variety of affirmative defenses including: (1) good faith/reasonable grounds for believing they did not violate the FLSA; (2) good faith and acted in conformity with DOL guidance; (3) waiver, equitable estoppel, consent and ratification; (4) statute of limitations; (5) failure of condition precedent because Predmore made no notification before asserting her claim; (6) failure to mitigate damages; (7) unclean hands; (8) windfall, unjust enrichment and offset; (9) estoppel by contract; (1) failure of condition precedent per the requirements in the Licensing Agreement; and (11) *pari delicto*.

As for the first and second affirmative defenses, Mehmeti testified that someone reviews DOL material to insure that PT's complies with federal labor laws. However, Mehmeti also testified that he is familiar with industry arrangements and the multiple lawsuits within the industry in which the independent contractor arrangement used has been challenged and found to violate the FLSA. The evidence does not support that Respondents had a good faith/reasonable ground for believing this arrangement did not violate the FLSA and that they were acting in conformity with DOL guidance.

Likewise, Respondents' defenses of waiver, equitable estoppel, consent and ratification are likewise rejected. Predmore did not waive her rights to seek proper pay under the FLSA. That Predmore has been a plaintiff in other FLSA lawsuits does not estop her from seeking what she is legally owed in this case. Predmore did not consent to nor ratify Respondents violations of the law.

Predmore's claims are not barred by the statute of limitation. Predmore worked for PT's between February and September 2019. The FLSA has a 2 year statute of limitations extended to 3 years for willful violations. Predmore timely filed her lawsuit

when she sued on February 28, 2020 and her arbitration claim was timely when it was filed on March 17, 2021.

Many of Respondents affirmative defenses appear to be an effort to circumvent the purposes of the FLSA by contract. The FLSA was specifically design to prevent private contracts from waiving the rights granted by the FLSA. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S. Ct. 895, 89 L. Ed. 1296 (1945). The affirmative defense of failure of condition precedent because the licensing agreement required notification before the assertion of a claim was asserted twice. Yet this affirmative defense fails. Though Predmore did not notify PT's before she filed her claim, as a matter of public policy, the FLSA does not require her to do so. PT's suffered no harm from Predmore's failure to provide this notification. For the same reason, Respondent's estoppel by contract affirmative defense also fails. Predmore has not attempted to deny the terms of the contract as would be required for estoppel by contract. Instead, Predmore has merely contended that the contract cannot override her rights under the FLSA—which is correct.

Likewise, Respondents' failure to mitigate damages argument fails. That Predmore continued to work for PT's even knowing that PT's independent contractor arrangement may violate the FLSA does not mean that PT's does not have to comply with the FLSA for the time in which Predmore worked for it.

Respondents' developed no evidence to show that Predmore had unclean hands. This defense fails. That Predmore has been a plaintiff in other FLSA cases in the exotic dancer industry does not give her unclean hands such that her claims are barred here. Likewise, there is no windfall or unjust enrichment to Predmore and courts have specifically rejected claims for an offset. *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 741 (5th Cir. 2010).

Finally, Respondents affirmative defense of *pari delicto*—meaning equal fault or wrong—also fails. As between the parties, there is no equal fault here. The independent contractor arrangement created by Respondent's has been challenged and found to violate the FLSA in the vast majority of the cases. There is no equal fault here.

None of Respondents affirmative defenses alter the conclusion that Predmore was improperly classified and is owed damages under the FLSA.

## II.    Respondents' Counterclaims

Respondent PT's asserted a counterclaim against Predmore for breach of contract and unjust enrichment.

PT's argues that Predmore breached her Licensing Agreement in these ways:

11

1.    Claimant failed to keep a record of income earned from the club.

2.    Claimant breached the licensing agreement by seeking to compel certification.

3.    Claimant breached the licensing agreement by filing a lawsuit.

4.    Respondents may have attorney's fees because of the contract and claimant's bad faith.

However, multiple cases have considered such a counterclaim in a FLSA case and have rejected it. In the Fifth Circuit, this type of counterclaim has been soundly rejected. As the Fifth Circuit has noted, set offs and counterclaims are inappropriate in a case brought to enforce the FLSA's minimum wage and overtime provision because they cause the plaintiff to lose the substantive rights granted by the FLSA. *Martin*, 628 F.3d at 741; *McCaig v. Maverick Field Services, LLC*, No. 21-CV-00173-DC-RCG, 2022 WL 2782798 (W.D. Tex. May 26, 2022). *See also Waginer v, NYNY, LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986); *Coronado v. D.N. W. Houston, Inc.*, No. CIV.A. H-13-2179, 2015 WL 5781375 (S.D. Tex. Sept. 30, 2015); *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382 (6th Cir. 2016).

This counterclaim interferes with Predmore's ability to seek her rights to receive minimum wage and overtime under the FLSA.

Respondents contend they incurred attorney's fees after Predmore filed suit and they had to compel arbitration. However, there are legitimate reasons for first filing a lawsuit—even in the face of a contract compelling arbitration. In the event that the arbitration got dismissed for some reason, filing an arbitration claim does not preserve the statute of limitations. *Fonseca v. USG Ins. Services, Inc.*, 467 Fed. Appx. 260 (5th Cir. 2012). Thus, it is prudent to sue first and then move to arbitration to insure that the dispute has been timely filed before the statute of limitations expires.

Courts have also rejected counterclaims that seek to recover lap dance fees or entertainment fees such as those Predmore received directly from customers. This counterclaim has been rejected in other FLSA cases. *See De Angelis v. Nat'l Entm't Group, LLC*, No. 2:17-CV-924, 2018 WL 4334553 (S.D. Ohio Sept. 11, 2018); *Wagoner v. N.Y.N.Y., Inc.*, No. 1:14-CV-480, 2015 WL 1468526 (S.D. Ohio Mar. 30, 2015). The reason these counterclaims have been rejected is because it causes a dancer to waive their rights under the FLSA to recover a minimum wage.

In Texas, contractual provisions requiring a dancer to return tips if the dancer ever filed suit have been found to be unenforceable because it waives the substantive right to be paid a minimum wage. *Coronado v. D.N. W. Houston, Inc.*, No. CIV.A. H-13-2179, 2015 WL 5781375 (S.D. Tex. Sept. 30, 2015).

For the reasons cited in these cases, Respondents are not entitled to recover by contract any tips or entertainment fees paid to Predmore. Otherwise, Predmore would be required to waive her substantive FLSA rights to recover a minimum wage and/or overtime wages.

Respondents take nothing on the counterclaim for breach of contract against Predmore. Because they are not a prevailing party, Respondents are not entitled to attorney's fees.

Likewise, Respondents take nothing on its claim against Predmore for unjust enrichment. This equitable claim is based on the legal theory that no party should benefit at the expense of another party. Generally, unjust enrichment is not available as a claim when a valid contract exists between the parties. Because there was a contract in place between Predmore and Respondents, an unjust enrichment claim is not available to Respondents. *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671 (Tex. 2000). Respondents take nothing on their unjust enrichment claim.

## V.    Attorney's Fee Award

Predmore now seeks an award of $229,678.87 in attorney's fees from Respondents PT's Men's Club and Nick Mehmeti. Respondents oppose this request. With the filing of Claimant's Brief in Support of Increased Damages Award, Predmore sought an additional 8.2 hours in attorney's fees for the work of Matthew Thomson.

Respondent Nick's Management Inc, seeks an award of costs against Claimant Predmore in the amount of $13,749.30. Claimant opposed this request.

This litigation has been hotly contested by all parties for over two and a half years. This case has involved extensive motion practice by both sides, including motion practice in federal court before this arbitration was initiated. Once the arbitration proceeding started, the litigation continued to be hotly contested. It included dueling motions to compel. It included dueling and detailed motions for summary judgment. It included a two day in person hearing. It included detailed post-hearing briefing prior to the current fee application being filed.

### A.    Predmore is the prevailing party and may receive an award of fees and costs.

Claimant is the prevailing party in this case on the FLSA claims.

An award of fees and costs is mandatory for the plaintiff who prevails under the FLSA *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 404 (5th Cir. 2002). Claimant supported her fee application with the time sheets of her counsel setting forth the contemporaneous time entries of her counsel. Claimant reduced its request in its Reply in Support of Motion for Attorney's Fees and Costs.

### B.   Respondents challenge Predmore's requested fee award on a variety of grounds.

Respondents challenge Predmore's request for fees on a variety of grounds that include:

- Claimant did not prevail on all of her claims and did not prevail against Nick's Management, Inc.
- The fees and costs sought are excessive given the award to Claimant.
- Claimant should not recover for any fees incurred in the federal court litigation.
- Claimant cannot recover for excessive or duplicative hours or for time spent on unsuccessful motions or for vague time entries.
- Claimant can recover no fees relating to the breach of contract counterclaims.
- Claimant can recover no legal assistant fees since those time entries were not part of the contemporaneous time records.
- Claimant failed to provide evidence of her requested fees in response to discovery requests and did not timely supplement its responses.

For a variety of reasons, Respondents' arguments fail.

Predmore is the prevailing party. Predmore prevailed on her FLSA claims against two of the three respondents. Predmore prevailed on the counterclaims asserted against her by all three respondents, including Nick's Management, Inc.

The only claim on which Predmore did not prevail was her FLSA claim against Nick's Management, Inc. During the hearing, at the most, approximately 10 to 15 minutes of testimony was devoted to that claim. The small amount of time devoted to this issue at the hearing does not justify Respondents' request to cut Claimant's requested fees by one third—especially because Claimant had to defend counterclaims from Nick's Management, Inc.

Though Predmore received an award of only **$18,035.98**, that does not necessarily make the fees sought unreasonable. In FLSA cases, the fee award will often

be substantially more than the FLSA award to the plaintiff. The FLSA's fee-shifting provision recognizes that it is important for individuals with relatively small claims to have the ability to effectively enforce their rights. For example, on remand from the Fifth Circuit, in the case of *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991 (N.D. Tex. July 17, 2014), the trial court awarded the Plaintiff $11,873.79 in actual damages, $11,873.79 in liquidated damages and $313,552.31 in attorney's fees and $725.20 in costs. *Black*, 2014 WL 3534991, at *9.

In reviewing the fee application, the relevant inquiry is whether the fees were reasonably incurred in this arbitration—not at the degree of success as compared to a party's initial demand. *See, e.g., Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2016 WL 7230873 (N.D. Cal. Dec. 14, 2016). A party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003).

Respondents argue that Claimant should not recover attorney's fees for clerical work or for work that is excessive or duplicative. Appropriate deductions for work determined to be clerical in nature or unnecessarily excessive or duplicative work were made.

Respondents argue that Claimant cannot recover attorney's fees incurred in defending against Respondents' counterclaims. Tex. Civ. Prac. & Rem. Code § 38.001 does not allow Predmore to recover fees for successfully defending a counterclaim. Thus, Respondents contend Predmore should have segregated the defensive work from her claim for fees and that the failure to segregate such work is fatal to her claimed fees.

However, Texas law does not require fees to be segregated when the services rendered related to multiple claims arising out of the same facts or transactions that the prosecution or defense entails proof or denial of the same facts so as to render attorney's fees inseparable. *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d at 433-34. Here, the claims were so intertwined. These claims—both FLSA and breach of contract—arose out of the interpretation of the License and Lease Agreement.

Respondents argue that *Naranjo v. Nick's Mgmt., Inc.*, No. 3:21-CV-2883, 2022 WL 3139755 (N.D. Tex. Aug. 5, 2022), Civil Action No. 3:21-CV-2883 (N.D. Tex. Aug. 5 2022) held that breach of contract claims are not so intertwined as to be compulsory counterclaims. Thus, Respondents contend Predmore cannot argue her defense of the counterclaims was inextricably intertwined with the prosecution of her claims.

Respondents misread *Naranjo*.

In *Naranjo,* the court applied the holding of *Brennan v. Heard,* 491 F.2d 1, 4 (5th Cir. 1974), *rev'd on other grounds* by *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988).  The *Heard* case holds that the FLSA bars counterclaims against an FLSA plaintiff because setoffs and counterclaims are inappropriate in any case brought to enforce the FLSA's minimum wage and overtime provisions.  *Naranjo* at *3.  Recognizing that some courts apply *Heard* only to permissive counterclaims, after an analysis, Judge Godbey determined that he would apply *Heard* <u>*without deciding*</u> whether the Defendants' counterclaims were permissive or compulsory.  *Naranjo,* 2022 WL 3139755, at *4.

Judge Godbey then explained *Heard* barred all of the Defendants' counterclaims for (1) breach of the Licensing Agreement collective action waiver, (2) breach of the Licensing Agreement notice and record-keeping mandates, and (3) attorney fees.  Judge Godbey explained that no counterclaims were for "wages" that Defendants prepaid to Naranjo to fall within the *Singer v. City of Waco, Tex.,* 324 F.3d 813, 828 (5th Cir. 2003), n. 9 (5th Cir. 2003) exception. *Naranjo,* 2022 WL 3139755, at *5.  The court then concluded that *all* of Defendant's counterclaims are barred by Fifth Circuit precedent.  *Id.* at 5. The Arbitrator made this same conclusion—that these same counterclaims against Predmore were barred by the FLSA—in the Interim Award.

As Claimant notes, because Claimant proved she had been misclassified as an independent contractor and was entitled to FLSA protections, Claimant then proved Respondents counterclaims are barred by the FLSA.  These claims were inextricably intertwined. Claimant does not have to segregate the fees for prosecution of her FLSA claims from the defense of the counterclaims.

Respondents argue strenuously that Claimant should not be allowed to recover more than $50,000 in attorney's fees because Claimant failed to (1) identify counsels' hourly rates, (2) supplement her production of fee statements, and (3) estimated fees at only $50,000 in the May 2022 interrogatory responses.  The implication from this argument is that Respondents might have made more of an effort to settle if they understood the full scope of Claimant's fee request earlier.

Claimant's production of information concerning its fees in March and May 2022 was sparse at best.  Claimant failed to disclose its hourly rate. She provides no explanation for this failure. Claimant did not supplement this production before the hearing.  While Claimant should have supplemented and updated her production of fee invoices before the hearing, nothing in this pattern of very aggressive litigation indicates Respondents would have explored settlement more seriously earlier in the

case had the information been produced earlier. And, in this case, even Respondents' failed to produce relevant information in the form of 23 time sheets until after the hearing.

As set forth in the motion and response, efforts to settle at reasonable amounts were rebuffed by Respondents. Even when a settlement offer was made on the first day of the hearing, it did not include a reasonable amount for attorney's fees based on the fees Claimant estimated at that time.

### B.      The *Lodestar* fee is the appropriate method to compute the fee award.

The lodestar is computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). There is a strong presumption in the reasonableness of the lodestar amount. *Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

### 1.      The hourly rates requested by counsel.

Claimant seeks these hourly rates for her counsel:

| | |
|---|---|
| Matthew Thomson | $525.00 per hour |
| Olena Savytska | $475.00 per hour |
| Drew Herrmann | $475.00 per hour |
| Pamela Herrmann | $425.00 per hour |
| Legal Assistants | $175.00 per hour |
| Law clerk | $ 175.00 per hour |

Predmore's counsel support their request for these rates through their affidavit testimony. Respondents challenge these requested rates as inflated for the Northern District of Texas and cites to the State Bar of Texas 2015 and 2019 fact sheets on attorney income and hourly rates as evidence of appropriate hourly rates.

Claimant's proposed hourly rates were supported by affidavit testimony and citations to reported decisions. The rates are within the ranges approved by Courts in the Northern District of Texas.

Respondents challenge Drew Herrmann's rate of $475.00 since he was approved in 2021 for a rate of $395.00 per hour. However, that is explained by Mr. Herrmann in that the $395 rate approved was his 2019 rate.

17

Respondents cite to the 2015 or 2019 Texas Bar Fact Sheet as evidence of appropriate rates. Yet, Texas State Bar's Department of Research and Analysis itself specifically advises against reliance on this report for that purpose. On the website, it notes "The hourly rate information is not designed for nor intended to be used for setting appropriate attorney fees. There are other factors that should be considered in determining attorney hourly rate fees that are outside the scope of these reports."[2]

Considering all of the evidence cited by the parties, the Arbitrator finds that the hourly rates requested are reasonable.

### 2.     The time spent working on this case for which counsel seek fees.

Respondents challenge Claimant's requested fees on a variety of factors as excessive or unwarranted. Respondents also challenge some of the time entries as not sufficiently detailed. Many of Respondents' arguments are without merit. For example, Respondents fault Claimant for moving for summary judgment—arguing Claimant should have known that factual issues existed. Yet Respondents filed their own motion when Respondents should have known that factual issues existed.

There are areas in which some time spent may have been excessive or unnecessary. There are also areas where the time entries could benefit from additional detail or description of the work done. Some descriptions are extremely brief. Recognizing that Predmore agreed to make additional adjustments and deleted some additional time from that requested, the Arbitrator makes these additional adjustments:

- 41.5 hours seeking conditional certification. Claimant agreed to reduce 20.6 hours from Ms. Savytska's time for this. However, the arbitrator will deduct another **10 hours** on this item.
- The Claimant spent 15 hours fighting the arbitration provision. The arbitrator will deduct another **5** hours from Ms. Savytska, **2** hours from Mr. Thomson and **2** hours from Mr. Herrmann.
- There was extensive fighting over discovery with motions to compel filed by both sides. While there were issues that required those motions, both sides asserted many inappropriate and boilerplate objections that did not move the arbitration process forward efficiently. Both sides failed to timely supplement discovery responses quickly. Both sides have complained mightily about the other side's failure to supplement. Because of this, the

---

[2] https://www.texasbar.com/AM/Template.cfm?Section=Archives.

Arbitrator deducts **15**  hours from Mr. Thomson's time and **5** hours from Ms. Savytska's time.

- The 11.50 LSS hours charged by the Herrmann firm appears to be clerical in nature and will be deleted.
- The 22.95 hours of Law Clerk time charged does not all appear to be necessary to advance the case. Much of the time appears to be attending client meetings and the descriptions of completing research tasks as assigned is not sufficient to determine if this work was necessary or not.  The Arbitrator will deduct **15** hours of law clerk time.
- LLR did not keep contemporaneous records of the paralegal time worked on the case and made an estimate of 36 hours, later reduced to 32.40 hours. While it may be a conservative estimates, other than one paragraph in Mr. Thomson's affidavit, there is no detailed description of the work performed by the LLR paralegals.  The Arbitrator will deduct **15** hours of LLR paralegal time.
- Between Mr. Herrmann and Mr. Thomson, Claimant spent 19.2 hours on the post-hearing brief.  The Arbitrator will deduct **4** hours from Mr. Thomson and Mr. Herrmann each.
- The Claimant spent approximately 30 hours of time preparing the fee motion and supporting affidavits between Mr. Thomson and Mr. Herrmann.  The Arbitrator will deduct **7** hours of time from Mr. Thomson and from Mr. Herrmann each.

These deductions will be reflected in the final fee calculation.

Respondents challenge Claimant's travel costs as unreasonable.  However, Claimant suggested conducting the hearing by Zoom to avoid the travel costs. Respondents rejected this suggestion out of hand.  Claimant agreed to remove the hotel cost for local counsel   Given this deduction, the costs sought are reasonable.

### C.    The *Johnson* Factors support the lodestar amount.

The lodestar amount is supported after the application of the twelve factors in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), abrogated by Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).  The 12 *Johnson* factors are:

1.    the time and labor required;
2.    the novelty and difficulty of the issues in the case;
3.    the skill requisite to perform the legal services properly;

4.      the preclusion of other employment by the attorney due to the acceptance of this case;

5.      the customary fee charged for those services in the relevant community;

6.      whether the fee is fixed or contingent;

7.      time limitations imposed by the client or the circumstances;

8.      the amount involved and the results obtained;

9.      the experience, reputation, and ability of the attorneys;

10.     the undesirability of the case;

11.     the nature and length of the professional relationship with the client;

12.     awards in similar cases.

*Id.* After the application of these factors to the requested lodestar amount, the Arbitrator finds that the lodestar amount is supported.

This case took over 2 years and was hotly contested at every stage—even after the hearing was closed due to the discovery of the additional time sheets. The issues related to the FLSA claim and the counterclaims are complicated and, in some cases, novel. Prosecuting this claim took knowledgeable and experienced FLSA practitioners. Each moment spent working on this case is a moment in which Claimant's counsel cannot work on other cases. Claimant's counsel took this case on a contingent fee, which meant that they were risking nonpayment for all of their time if Claimant did not prevail.

Respondents argue that the amount and results obtained do not justify the fees sought. However, as noted above, the FLSA's fee-shifting provision recognizes that it is important for individuals with relatively small claims to have the ability to effectively enforce their rights. For example, in the case of *Black v. SettlePou, P.C.,* following remand from the Fifth Circuit, the trial court awarded the Plaintiff $11,873.79 in actual damages, $11,873.79 in liquidated damages and $313,552.31 in attorney's fees and $725.20 in costs. *Black v. SettlePou, P.C.,* No. 3:10-CV-1418-K, 2014 WL 3534991, at *9 (N.D. Tex. July 17, 2014).

Claimants correctly notes that this arbitration is not a desirable case. One reason employers regularly include a class action/collective action waiver in arbitration agreements is that employers know that a single plaintiff wage case is an unattractive case because the attorney time required and costs of litigation will often exceed the employee's unpaid wages.

Under the *Johnson* factors, the lodestar fees requested are supported.

D.    **Fees Awarded.**

The fees awarded to Claimant's counsel are:

| Attorney | Total Hours Sought after Reduction | Additional Hour reduction | Total Hours Awarded after Additional Reductions | Rate | Lodestar |
|---|---|---|---|---|---|
| Olena Savytska | 77.98 | -20 hours | 57.98 | $475 | $27,540.50 |
| Matt Thomson | 253.72[3] | -28 hours | 225.72 | $525 | $118,503.00 |
| Law Clerk | 22.95 | - 15 hours | 7.95 | $175 | $1,391.25 |
| Paralegal | 32.40 | -15 hours | 17.40 | $175 | $3,045.00 |
| | | | | | |
| **LRR** | | - 64 hours | | | **$150,479.75** |
| | | | | | |
| Drew Herrmann | 89.01 | - 13 hours | 76.01 | $475 | $36,104.75 |
| Pamela Herrmann | 32.13 | | 32.13 | $425 | $13,655.25 |

---

[3] This includes an additional 8.2 hours of time relating to obtaining the additional time sheets and presenting the evidence related to the additional time sheets.

| | | | | | |
|---|---|---|---|---|---|
| Legal Support Staff | 11.50 | -11.50 | 0 | | $0 |
| | | | | | |
| **Hermann Law** | | | | | **$49,760.00** |
| | | | | | |
| **Grand Total** | | | | | **$200,239.75** |

The costs awarded to Claimant are **$10,353.80**.

### E. Nick's Management, Inc.'s Motion for Costs.

Respondent Nick's Management, Inc. ("Nick's") seeks an award of costs as a prevailing party on Predmore's FLSA claims against it.

Nick's admits that section 216(b) of the FLSA is silent on whether costs may be awarded to a prevailing defendant. Thus, Nick's seeks an award of costs, arguing the Arbitrator has the discretion to award costs when a statute or rule does not preclude it. *Lochridge v. Lindsey Mgmt. Co., Inc.*, 824 F.3d 780, 782 (8th Cir. 2016). In *Lochridge*, the court remanded the issue to the district court for a decision on costs, pointedly noting that whether to award costs ultimately lies within the sound discretion of the district court. *Id.* at 783.

Here, Claimant has overcome any presumption that Nick's should recover its costs for successfully fending off Claimant's claim. Nick's asserted a counterclaim against Plaintiff. Nick's was an active participant in asserting this claim against Claimant. The bulk of the costs Nick's seeks are its purported share of the arbitration costs and fees. However, because Nick's asserted a counterclaim against Claimant, it would have always incurred those costs.

Under these circumstances, Claimant has overcome the presumption that Nick's, by prevailing on Claimant's FLSA claim, is entitled to the requested costs.

Nick's takes nothing on its motion for costs.

## VI.   Final Award

It is ordered that Predmore may recover the following damages from PT's Men's Club and Nick Mehmeti:

| Element of Damages | Amount |
|---|---|
| Minimum Wages | $4,170.85 |
| Overtime | $367.14 |
| House Fees | $2,800.00 |
| Tip outs | $1,680.00 |
| Sub-Total | $9,017.99 |
|  |  |
| Liquidated Damages | $9,017.99 |
|  |  |
| Sub-Total | $18,035.98 |
|  |  |
| Claimant's fee award | $200,239.75 |
| Costs awarded to Claimant | $10,353.80 |
|  |  |
| Total final award to Claimant | $228,629.53 |

The administrative fees and expenses of the American Arbitration Association totaling $2,950.00 and the compensation and expenses of the arbitrator totaling $29,750.00 shall be borne as incurred.

All relief not granted herein is denied.

Jan. 9, 2023

Date

Karen K Fitzgerald

I, Karen K Fitzgerald, hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

Jan.9, 2023

Date

Karen K Fitzgerald

24